UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYES CARRASCO VALLADARES, | Case No. 1:21-cv-01156-CDB (SS) |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. §405(g) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (Doc. 14) |

Plaintiff Reyes Carrasco Valladares ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act").  (Doc. 1).  The matter is before the Court on the Administrative Record (Doc. 10, "AR") and the parties' briefs (Docs. 14, 18, 19), which were submitted without oral argument.  Upon review of the record, the Court finds and rules as follows.[1]

**I.      BACKGROUND**

**A.      Administrative Proceedings and ALJ's Decision**

On August 14, 2018, Plaintiff filed an application for disability and disability insurance benefits with an alleged disability onset date of May 17, 2017.  (AR 46).  Plaintiff's claim was

___

[1] On February 18, 2022, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to the undersigned.  (Doc. 9).

initially denied on October 1, 2018, and again upon reconsideration on December 19, 2018. *Id.* Plaintiff requested a hearing before an Administrative Law Judge on December 27, 2018. *Id.* Debra J. Denney, the Administrative Law Judge ("ALJ"), held a telephone hearing on May 28, 2020, during which Plaintiff, with the assistance of a Spanish interpreter, and impartial vocational expert Robin Cook ("VE") testified. *Id.* The ALJ held a supplemental telephone hearing on October 1, 2020 at which Plaintiff through a Spanish interpreter, impartial medical experts Mary E. Buban, Psy. D. and Seth Meltzer, M.D., and impartial vocational expert Aimee Spinelli testified. *Id.* Plaintiff amended the alleged disability onset date to April 12, 2018. *Id.* The ALJ issued an unfavorable decision on January 8, 2021, finding Plaintiff was not disabled. (AR 1, 49-60). The Appeals Council denied Plaintiff's request for review on June 29, 2021, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520(a) and 416.920(a). (AR 49-60). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 12, 2018, the amended alleged onset date. (AR 49).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: anxiety, depression, and degenerative disc disease. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 49). The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2]

---

[2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the

Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe. (AR 50-51). The ALJ also found that the evidence in this case fails to establish·the presence of "paragraph C" criteria.[3] (AR 51).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except for the following non-exertional limitations:

> [Plaintiff] can lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours in an eight-hour workday; can occasionally climb ramps and stairs; should not work on ladders, ropes, scaffolds, unprotected heights, or fast-moving machinery; and occasionally stoop, kneel, crouch, and crawl. [Plaintiff] can perform simple, routine, and repetitive work; is able to sustain attention, concentration for up two hours at a time; can interact appropriately with coworkers and supervisors; would do best with brief, occasional contact only with public; and is able to tolerate routine change and otherwise able to sustain routine and maintain attention.

(AR 51).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he followed the two-step process as set forth in 20 C.F.R. § 404.1529, SSR 16-3p, and 20 C.F.R. § 404.1520c. (AR 52). The ALJ noted Plaintiff's allegations of disability from the record:

> [Plaintiff] alleged disability due to depression, anxiety, and heart palpitations. [He] reported that h[is] condition worsened to the point that he experienced constant panic attacks and escalating anxiety levels. He also reported that the left side of his face, arm, and hand were numb. At the initial hearing, [Plaintiff] testified that he experiences dizziness and nausea at times. At the supplemental hearing, [he] testified the he suffers from ongoing anxiety that causes difficulty with working

four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id*. To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id*.

[3] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that diminishes the signs and symptoms of [Plaintiff's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C)(1). "Paragraph C," subsection (2) requires that Plaintiff "have minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life." *Id.* at subsection (C)(2).

3

> [Plaintiff] also alleged limitations to talking, stair climbing, seeing, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others.  Similarly, Aby Carrasco, [Plaintiff's] wife, noted that [Plaintiff] has limitations to lifting, squatting, bending, standing, reaching, kneeling, talking, stair climbing, seeing, remembering, completing tasks, concentrating, understanding, and following instructions.

(AR 52) (citing Hearing Testimony; Exs. 2-5E).  Upon consideration of the evidence, the ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical evidence and other record evidence.  *Id.*  The ALJ noted that because there is overlap in symptomology between different mental impairments and the nature of mental diagnoses is inherently subjective, she considered Plaintiff's psychological symptoms and their effect on functioning together instead of separately, regardless of the diagnostic label attached.  *Id.*

The ALJ considered Plaintiff's anxiety, depression and reported symptoms including difficulty remembering and concentrating and limited Plaintiff to performing simple, routine, and repetitive work and found that he is able to sustain attention and concentration for up to two hours at a time.  (AR 53).  The ALJ considered Plaintiff's reluctance to leave his home or interact with others and found that he can interact appropriately with co-workers and supervisors but would do best with brief, occasional contact only with public.  The ALJ found that given Plaintiff's nausea and dizziness symptoms, he is able to tolerate routine change and otherwise able to sustain routine and maintain attention but that he should not work on ladders, ropes, scaffolds, unprotected heights, or near fast-moving machinery, and found no additional limitations are supported.  *Id.*

The ALJ, considering the record of Plaintiff's hearing testimony, medical evidence, treatment notes, mental health treatment history, activities of daily living ("ADLs"), and prior administrative medical findings, determined that the record does not support limitations that would prevent him from working within the RFC.  (AR 51-58).  The ALJ assessed the RFC's limitations acknowledging Plaintiff's reported pain, reduction in range motion testing, and imaging, while considering that the exam findings, overall treatment records, and reported activities are inconsistent with his allegations as to standing, walking, and stair climbing.  (AR 54).  The ALJ

4

concluded that the assessed RFC is supported by the evidence.  (AR 58).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work under 20 C.F.R. §§ 404.1565.  *Id.*  The ALJ found that Plaintiff was a younger individual on the amended alleged disability onset date and has a limited education.  *Id.*  The ALJ found that transferability of job skills is not material to the determination of disability based on her finding that Plaintiff is not disabled whether or not he has transferable job skills under SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.  (AR 59).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  *Id.*  The ALJ cited assemble small products, laundry worker, and merchandise marker based on the testimony of the vocational expert.  (AR 59-60).  The ALJ therefore concluded a finding of "not disabled" was appropriate under sections 216(i) and 223(d) of the Act from April 12, 2018, through the date of the decision.  (AR 60).

**B.    Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**II.    LEGAL STANDARD**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id*.

The court will review only the reasons provided by the ALJ in the disability determination

and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not

6

satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

III.    **ISSUES AND ANALYSIS**[4]

Plaintiff seeks judicial review of the Commissioner's final decision denying her application and raises five (5) issues:

1. Whether the ALJ provided specific and legitimate reasons for discounting the opinions of testifying medical expert Seth Meltzer, M.D. and medical expert Rachna Soriano, D.O.;

2. Whether the ALJ explained her departure from the limitations set forth in the opinion of testifying medical expert Mary Buban, Psy.D.;

3. Whether remand is necessary for the ALJ to consider and address the medical source opinion of Plaintiff's treating psychiatrist, Ann Torres, M.D.; and

4. Whether the ALJ provided germane reasons for discounting the third-party statements of Plaintiff's spouse, Aby Carrasco.

(Doc. 14 at 15).

**A.    Whether the ALJ Provided Specific and Legitimate Reasons for Discounting Medical Expert Opinions and Departing from Limitations Assessed Therein**

1.    Parties' Contentions

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for discounting the opinions of testifying medical expert Dr. Seth Meltzer and medical expert Dr. Rachna Soriano. *Id.* at 16-23. Plaintiff argues the ALJ, in finding Dr. Meltzer's opinion partially persuasive and supported by a detailed explanation, failed to provide specific and legitimate reasons for discounting the assessment that Plaintiff was limited to standing and walking a total of three hours in an eight-hour workday. *Id.* at 18. Plaintiff contends that the ALJ fails to explain why or how Meltzer's assessed standing and walking limitations were contradicted by diagnostic findings of record, Plaintiff's activities of walking, and ability to work part-time in 2019 or properly discounted by the ALJ's selective reference to examination findings. *Id.* at 18-20. As to Dr. Soriano, Plaintiff acknowledges that although the opinion is incomplete as page two of the statement is absent from the record, he argues that absence does not invalidate the rest of the

---

[4] Filings are referenced herein according to the associated CM/ECF-designated pagination.

opinion, the supportability and consistency of which were not assessed by the ALJ. *Id.* at 22-23. As to Dr. Buban's opinion, Plaintiff asserts that although the ALJ found the opinion mostly persuasive, the ALJ did not provide specific analysis addressing or rejecting Dr. Buban's assessment to Plaintiff's mental limitations. *Id.* at 24-25.

Defendant contends the ALJ properly evaluated the medical opinions under the applicable regulations. (Doc. 18 at 9). Defendant argues the ALJ properly assessed the consistency of Dr. Meltzer's opinion with the longitudinal evidence in finding the opinion only partially persuasive, and that the ALJ discussed the opinion's supportability in noting that Plaintiff's lumbar spine MRI form 2020 was not supported of the assessed limitations. *Id.* at 13-14. Defendant contends the ALJ properly found Dr. Soriano's opinion unpersuasive because it was incomplete and, at the hearing, Plaintiff's attorney dismissed the report as "not critical." *Id.* at 15 (citing AR 168). Defendant argues that the assessed RFC adequately accounts for Dr. Buban's opined imitations as the RFC contained similar but not identical mental limitations. *Id.* at 17.

Plaintiff argues in reply that the ALJ's reasons for discounting the opinions of Drs. Meltzer, Soriano, and Buban failed to meet the substantial evidence standard. (Doc. 19 at 3). Plaintiff contends the ALJ's rationale for discounting Dr. Meltzer's opinion was not supported by record evidence as the ALJ disregarded Dr. Meltzer's testimony that Plaintiff would be limited to frequent neck movements due to his cervical spinal stenosis and would miss one day of work per month due to increased pain. He also argues the ALJ erroneously substituted his own interpretation of MRI and examination evidence for that of a medical expert, and Plaintiff's activities did not show that he had a functional capacity demonstrating that he could work in a competitive full-time job. *Id.* Plaintiff asserts the ALJ fails to explain how she considered the supportability and consistency of Dr. Soriano's opinion. *Id.* at 3-4. Plaintiff contends the ALJ did not explain her departure from Dr. Buban's assessed mental limitations that Plaintiff could not perform tandem work, that he should work independently of others, and that he should not perform fast-paced work or work involving production quotas. *Id.* at 4.

### 2. Governing Authority

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the

agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a

prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

### 3. Dr. Seth Meltzer

#### a. *Dr. Meltzer's Opinion*

At the hearing, medical expert Dr. Meltzer testified that he found the following impairments: mild central canal stenosis of the cervical spine (from Ex. 7F), thoracic spine degenerative disc disease and lumbar spine degenerative disease (from Ex. 20F), and mild disequilibrium (from the ears, nose, and throat physician's notes regarding dizziness). (AR 170-71). Dr. Meltzer found that these impairments did not meet any listing in the Social Security Regulations but that he noted specific functional limitations or restrictions from these limitations. (AR 171). Dr. Meltzer opined the following limitations of Plaintiff: lifting up to 20 pounds frequently; sitting for six hours and standing and walking for three hours in an eight-hour workday; no limitations as to reaching, fingering and feeling on the right or left upper extremities; could occasionally climb stairs but would never be able to kneel, crouch, crawl or stoop; and no significant environmental limitations. (AR 171-72). Dr. Meltzer noted Plaintiff's "antalgic gait leaning towards the left side" but that he did not "see a mention that he was using a cane or required a cane." (AR 173). He opined that Plaintiff is occasionally limited to balancing and never able to work with ladders or unprotected heights or fast moving machinery. (AR 173-74).

On cross-examination, Dr. Meltzer opined that Plaintiff would be frequently able to move his neck while acknowledging that movement could exacerbate pain in the neck region. (AR 174-75). He opined that Plaintiff would be able to reach forward full-time because he did not see any physical exam having any weakness or decreased range of motion in the upper extremity. (AR

11

175).  Dr. Meltzer testified that certain maneuvers cause pain that would linger for some time, noting from Ex. 32F that Plaintiff received an injection from a pain physician and that "it seemed as if [Plaintiff] was doing okay after the injection and that's an example of kind of dealing with it and it exacerbates the disease in his spine."  (AR 176).  Dr. Meltzer opined that Plaintiff would have to miss work due to increased pain about one day a month.  *Id.*  In response to the ALJ's inquiry whether he expects "these things to persist or in your review did it seem like there was any treatment that provided relief from these conditions[,]" Dr. Meltzer opined that he "would expect it to persist because the degenerative changes typically those are better.  Some treatment can alleviate as mentioned in [Ex. 32F].  There was a transforaminal epidural steroid injection that's noted.  It was also mentioned I think moving towards physical therapy.  So, there are things that can make it better.  The injections seem to have helped."  (AR 177).

*b.  Analysis*

The ALJ found the opinion of Dr. Meltzer partially persuasive, noting that Dr. Meltzer found Plaintiff "could lift and carry up to twenty pounds[,] sit for six hours[,] stand and walk for three hours[,] occasionally climb stairs[,] never knee[l], crouch, crawl, or stoop[,] balance occasionally[,] [could not] climb[] ladders, ropes, or scaffolds[,] and [have] no exposure to heights or fast moving machinery[.]"  (AR 56) (citing Hearing Testimony; Exs. 14D, 9F, 11F, 17F, 18F, 29-32F).  The ALJ acknowledged that Dr. Meltzer's opinion was "supported by a detailed explanation and is partially consistent with the overall evidence."  *Id.*

The ALJ noted from the medical evidence that diagnostic imaging did not show any lumbar spinal cord compromise and only a probable abutment or impingement of the L5 nerve roots, that Plaintiff reported injection therapy was significantly effective in treating radicular pain, there was no evidence of any surgical intervention, and Plaintiff had normal examination findings.  *Id.*  The ALJ acknowledged that "the evidence supports a limitation to the reduced range of the light exertional level" but that "the improvement with treatment, work activity, and gardening, do not support the need for any further reductions in standing or walking" and that Dr. Meltzer's assessment that Plaintiff is reduced to stand and walk for three hours is not consistent with the overall evidence.  *Id.*

Here, the ALJ appropriately considered the supportability and consistency of Dr. Meltzer's opinion in discounting the assessment that Plaintiff is limited to standing and walking for three hours. The ALJ found the opinion supported "by a detailed explanation" and explained her findings of the relevant medical evidence considered by Dr. Meltzer, including of Plaintiff's diagnostic imaging results, "significantly effective" improvement with radicular pain from injection therapy, normal examination findings, no use of assistive ambulatory devices, and the absence of evidence of surgical intervention. *See Woods*, 32 F.4th at 791-92; *see also Reddick*, 157 F.3d at 725 (ALJ must "set forth his own interpretations and explain why they, rather than the doctors, are correct."). The ALJ acknowledged that the evidence considered supports some limitations but does not support any further reductions in standing or walking. After discussing the medical evidence, the ALJ referenced Plaintiff's improvement with treatment, past work activity in 2019, and activities of daily living of taking brisk walks and gardening as additional reasons in discounting Dr. Meltzer's opinion as inconsistent with the overall evidence. (AR 56).

"An ALJ properly may consider a plaintiff's reported activities in evaluating the persuasiveness of medical opinions." *Donnelly v. Comm'r of Soc. Sec.*, No. 1:21-cv-01117-CDB (SS), 2025 WL 1473954, at *9 (E.D. Cal. May 22, 2025) (citing *Leonard v. Comm'r of Soc. Sec.*, No. 1:21-cv-00627-EPG, 2022 WL 4123990, at *4 (E.D. Cal. Sept. 9, 2022) ("[W]hen considered in conjunction with the rest of the ALJ's reasoning, the ALJ's reliance on Plaintiff's daily activities—caring for her cat, preparing simple meals, cleaning, and sometimes administering her father's insulin, etc.—is a reasonable basis to discount the severe limitations assessed [in a medical opinion]")). "This analysis comports with the applicable standards setting forth 'supportability' and 'consistency' as the most important factors when evaluating opinions in the record." *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)). Therefore, the ALJ properly addressed how she considered the supportability and consistency of Dr. Meltzer's opinions in finding the opinion partially persuasive and incorporating these considerations in the RFC such that the ALJ's discounting of the opinion's limitations to three hours standing and walking is supported by substantial evidence. *See id; Woods*, 32 F. 4th at 791-92; *Jones v. Saul*, No. 2:19-CV-01273 AC, 2021 WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) ("the ALJ must explain how the agency considered the supportability and

13

consistency of a medical opinion.… [T]he ALJ [is not allowed] to forego articulation of their 'reason or reasons' altogether; rather, [the new regulations] provide specific articulation requirements.").

4.    Dr. Rachna Soriano

`    *a.  Dr. Soriano's Opinion*

At the hearing, the ALJ noted that she requested Dr. Soriano to testify but that he was not available. (AR 168).  The ALJ noted that Plaintiff's counsel's letter to the ALJ indicated that "there were two pages missing from the Heather in SS" to which Plaintiff's counsel responded that "[m]y understanding in 26-F, … I didn't see anything about standing and walking.  But, I can do that sort of anew since we have a new doctor.  It's not critical." *Id.*  The ALJ confirmed that Plaintiff's counsel was speaking of two missing pages from Exhibit 26F.  (AR 168-69).

At Exhibit 26F, the ALJ requested via interrogatories Dr. Soriano's professional opinion on Plaintiff's claim.  (AR 1154).  Dr. Soriano opined that Plaintiff has difficulty lifting, bending, crawling, squatting, and kneeling.  (AR 1155) (citing Ex. 20F).  He opined that Plaintiff could lift and carry up to ten pounds frequently and up to 20 pounds occasionally; could frequently use his hands for reaching, handling, fingering, feeling, and pushing/pulling; occasionally operate foot controls with his right foot and frequently with his left; occasionally climb stairs and ladders and balance and never climb ladders or scaffolds, stoop, kneel, crouch, or crawl; assessed environmental limitations that he can never work in unprotected heights, occasionally can move mechanical parts, operate a motor vehicle, humidity and wetness, dust odors, fumes and pulmonary irritants, extreme cold and heat, and moderate noise; and could perform activities such as shopping, traveling without a companion, ambulate without assistance, walk at a reasonable pace on rough or uneven surfaces, and use standard public transportation.  (AR 1155-62).  Dr. Soriano noted that the limitations found above lasted or will last for 12 consecutive months.  (AR 1162).

*b.  Analysis*

The ALJ noted that impartial medical expert Dr. Soriano opined that Plaintiff could lift and carry up to 20 pounds occasionally and ten pounds frequently; frequently use his hands; occasionally operate foot controls with the right foot and frequently with the left; occasionally

14

balance and climb ramps or stairs; never perform other postural activities; and never be exposed to unprotected heights. (AR 58) (citing Ex. 26F). The ALJ found Dr. Soriano's opinion unpersuasive because "it appears to be missing a page regarding standing or walking limitations" and "[t]his assertion of a missing page was also pointed out by the representative at the hearing." The ALJ found that because "it is incomplete, the opinion is not found to be persuasive." *Id.*

Generally, "[t]he [plaintiff] has the burden of proving that she is disabled." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the [plaintiff's] interests are considered … even when the [plaintiff] is represented by counsel.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); *see Brown v. Berryhill*, 697 F. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record."). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

As a preliminary matter, the Court notes that neither party asserts nor did the ALJ find that Dr. Soriano's opinion evidence is ambiguous or that the record is inadequate. At the hearing, Plaintiff's counsel observed that she did not see anything about standing or walking limitations in Dr. Soriano's opinion at Exhibit 26F but that she "can do that sort of anew since we have a new doctor" and that "[i]t's not critical." (AR 168). Plaintiff's counsel did not ask the ALJ to further develop the record, thereby forfeiting any argument thereto. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *see Marin v. Comm'r of Soc. Sec.,* No. 1:24-cv-00055-SAB, 2024 WL 3845357, at *9 n.8 (E.D. Cal. Aug. 16, 2024) ("[T]he Court notes that the weight of authority finds that the argument is forfeited by failing to raise the issue of the need for a consultative examination before

the ALJ."); *Puchert v. Comm'r of Soc. Sec.*, No. 2:22-CV-2177-DMC, 2024 WL 991639, at *8 (E.D. Cal. Mar. 7, 2024) ("Given that Plaintiff was represented by counsel during the administrative proceedings and never sought a new examination, the argument that the ALJ failed to develop the record is foreclosed."); *Jones v. Kijakazai*, No. 2:22-cv-00909-EFB (SS), 2023 WL 3955679, at *5 (E.D. Cal. June 12, 2023) (same); *Cindy T. v. Kijakazi*, No. 21-cv-00005, 2022 WL 16633010, at *3 (S.D. Cal. Sept. 23, 2022) ("Because it is Plaintiff's burden to present evidence in support of [his] alleged disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record."). Therefore, the ALJ's duty to further develop the record is not triggered in this case.

Here, the ALJ, in discounting the entire opinion based on its incompleteness for failing to include a page regarding standing or walking limitations, failed to consider the supportability and consistency of Dr. Soriano's assessed limitations *other than to standing or walking*, such as to stooping, reaching, handling, and environmental limitations to working in wetness and humidity. The ALJ therefore did not satisfy her duty to set forth how she considered the supportability of Dr. Soriano's assessment in finding his opinion unpersuasive. *See Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'") (quotation omitted); *Gonzales v. Kijakazi*, No. 1:20-cv-1530-SKO, 2022 WL 267438, at *12 (E.D. Cal. Jan. 28, 2022) ("[C]urrent Ninth Circuit law … requir[es] a detailed and thorough summary of conflicting evidence, and an interpretation of findings thereon, [and] the ALJ must explicitly address evidence that supports and is consistent with a less-than persuasive medical opinion[], and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons."); *Jones*, 2021 WL 620475, at *8. The ALJ likewise failed her duty to identify how the opinion is inconsistent with any other medical source of record. *Woods*, 32 F.4th at 792-93.

Because the ALJ failed to adequately address how Dr. Soriano's opinion lacked supportability or consistency or provide any other reason to discount the opinion, she improperly found the opinion not persuasive. Therefore, the ALJ's finding that Dr. Soriano's opinion was not persuasive is not supported by substantial evidence.

Plaintiff argues that the ALJ's error with regard to Dr. Soriano's opinion was not harmless because "[h]ad the ALJ adopted the[se] limitations[,] Plaintiff would not have been able to perform work as a small products assembler" or "the occupation of laundry worker." (Doc. 14 at 23). Plaintiff contends that Dr. Soriano's recommended restrictions to working in moderate noise environments preclude him from work as a small products assembler while Dr. Soriano's recommendation "with regard to stooping, reaching, handling, and working around wetness and humidity" precludes his work as a laundry worker. *Id.*

Defendant contends that "any error in the ALJ's assessment of Dr. Soriano was harmless" because "even if the ALJ had included the limitations from Dr. Soriano's report that were available, Plaintiff would still be able to perform the representative occupation of merchandise maker" such that "the ALJ's finding that Plaintiff was not disabled at step five remains valid[.]"[5]  (Doc. 18 at 16) (citing AR 59).  Although Plaintiff does not address Defendant's arguments as to whether Plaintiff remains able to perform the occupation of merchandise maker, (*see* Doc. 19), the Court considers the issue here.

Even if the Court were to assume that the ALJ erred by failing to incorporate Dr. Soriano's recommended restrictions, such error is harmless.  Because "[t]he ALJ only needed to identify one occupation that exists in significant numbers in the national economy to satisfy the [Agency's] burden at step five[,]" *Hugo R. v. O'Malley*, No. 23-cv-1222-JES(LR), 2024 WL 3597111, at *17 (S.D. Cal. July 30, 2024) (citing *Wolfe v. Astrue*, No. 09-cv-922-BR, 2010 WL 3222109, at *7 (D. Or. Aug. 13, 2010)), and here, the ALJ identified the occupation of merchandise maker based on

---

[5] "The duties of a merchandise maker are as follows under the DOT:

Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine [TICKETER (any industry); TICKET PRINTER AND TAGGER (garment).]

DOT 209.587-034, 1991 WL 671802 (Jan. 1, 2016).

17

the VE's testimony which exists in significant numbers in the national economy that Plaintiff can perform (*see* AR 59), the ALJ's inclusion of Dr. Soriano's recommended restrictions precluding the positions of assemble small products and laundry worker is immaterial to the ALJ's overall determination that Plaintiff was not disabled.  Accordingly, the ALJ's finding that the existence of a position "illustrates that representative jobs exist in significant numbers, even without taking the [assemble small products and laundry worker] position[s] into account" and therefore the ALJ's error to reconsider those positions is harmless.  *Hugo R.*, 2024 WL 3597111, at *17; *see id.* at *18 ("[A]ny error in the ALJ's decision with regard to the merchandise marker position is harmless. The ALJ only needed to identify one occupation that exists in significant numbers within the national economy to satisfy the [Agency's] burden at step five.").

> 5.    Dr. Mary Buban[6]

> *a.  Dr. Buban's Opinion*

Medical expert and clinical psychologist Dr. Buban testified at the hearing.  (AR 178-94). She testified that under the B criteria, Plaintiff's ability to understand, remember and apply information is "predominately mild" but she "would add a further restriction for learning new, complex tasks and interacting with others" which she felt "would be moderately limited and that limitation would involve no customer service type work, no tandem teamwork and any job [Plaintiff] would have he should do independent, primarily independent of others and that's to address anxiety issues."  (AR 181).  She opined that: Plaintiff's ability to concentrate, persist and maintain pace would be moderate based on "the combination of the psychologist and physical complaints in that it would just be a normal work place.  No fast paced work, no production quota work"; as to adapting and managing oneself, Plaintiff's overall was "mild" as she "was not finding significant cognitive limitations opined in the record and it did not appear that he was needing significant support for daily tasks" and "for instance, [at Ex. 14F], October [2019], he was working part-time.  So, a higher level of independence was apparent in the record that would not meet more

---

[6] The Court notes that Dr. Buban is identified as "Mary E. Buban" and "Dr. Buban" in the ALJ's decision and the parties' briefs while she is identified as "Dr. Mary Bublin" throughout the Hearing Testimony transcript.  *Cf.* (AR 55-56) and (Docs. 14, 18, 19) *with* (AR 178-94).  The Court uses "Dr. Buban" for purposes of this order.

than a mild limitation in adapting and managing oneself"; and that Plaintiff had a moderate limitation in interacting with others.  (AR 181-82).

### b.  Analysis

The ALJ acknowledged Dr. Buban's opinions in their entirety.  (AR 55) (citing Ex. 27F; Hearing Testimony).  The ALJ found Dr. Buban's opinion mostly persuasive because it was supported by a detailed explanation, "both in the paperwork and at the hearing," and was mostly consistent with the overall evidence."  *Id.* (citing Exs. 3E, 4E, 5F, 8F, 9F, 13-16F, 18F, 27F, 29-31F; Hearing Testimony).  Indeed, the ALJ properly considered the opinion was supported in evaluating Plaintiff's improvement with medication and normal mental examination findings and that the opinion was consistent with his activities of daily living in being able to pay bills and count change.  (AR 56).  The ALJ acknowledged Plaintiff's reported complaints in limiting him to simple, routine and repetitive tasks in the RFC.  *Id.*

A plaintiff's RFC is "the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a); *id.* § 416.945(a).  The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence.  *Bayliss*, 427 F.3d at 1217.  In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record.  *Id.*  However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected any implication in Dr. Koogler's evaluation that Turner was disabled, he did incorporate Dr. Koogler's observations into his residual functional capacity determination ... These limitations were entirely consistent with Dr. Koogler's limitation.").  Ultimately, a plaintiff's RFC is a matter for the ALJ to determine.  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  Any RFC that fails to include all of a plaintiff's credible limitations and any subsequent opinion of a vocational expert are "incomplete."  *See Bagby v. Comm'r Soc. Sec.*, 606 F. App'x 888, 890 (9th Cir. 2015).  An ALJ need not use the same language as the medical opinion setting forth the limitations, as long as the RFC sufficiently accounts for the limitations.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-1174 (9th Cir. 2008).

19

Plaintiff's contention that the ALJ did not provide any specific analysis addressing or explaining her departure from Dr. Buban's assessment—that Plaintiff could not perform tandem work, that he should work independently of others, and that he should not perform fast-paced work or work involving production quotas (AR 55-56, 181-82)—is unavailing.  Here, the ALJ's RFC is consistent with ·Dr. Buban's assessment because the ALJ found that Plaintiff could "perform simple, routine, and repetitive work" and "interact appropriately with co-workers and supervisors" with "brief, occasional contact only with the public" and that Plaintiff "is able to tolerate routine change and otherwise able to sustain routine and maintain attention."  (AR 51).  The RFC's restrictions are consistent with Dr. Buban's assessment of a moderate limitation to interacting with others.  "Accordingly, the RFC's assessment adequately captured all of [Dr. Buban's assessed] limitations [of Plaintiff]." *Rogers v. Comm'r of Soc. Sec.*, 490 Fed. Appx. 15, 17-18 (9th Cir. 2012) (citing *Stubbs–Danielson*, 539 F.3d at 1174).  Insofar as Plaintiff argues that Dr. Buban's opinion is subject to another rational interpretation of the record, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**B.      Whether Remand is Necessary for the ALJ to Consider and Address the Medical Source Opinion of Plaintiff's Treating Psychiatrist Dr. Ann Torres**

1.      Parties' Contentions

Plaintiff asserts that remand is necessary for the ALJ to consider and address the medical source opinion of Plaintiff's treating psychologist, Ann Torres, M.D.  (Doc. 14 at 25).  Plaintiff argues that Dr. Torres's February 24, 2021, letter constitutes a treating medical source opinion material to the evaluation of his disability claim.  *Id.*  Plaintiff argues that although the letter was submitted for the first time to the Appeals Council after the ALJ's decision, it is evidence the Court must consider in evaluating whether the ALJ's decision is supported by substantial evidence.  *Id.*

Defendant contends that Dr. Torres's letter does not amount to a medical opinion as the letter did not address Plaintiff's functional capabilities such that the ALJ is not required to discuss the statements or notations therein.  (Doc. 18 at 18-19).  Defendant argues the letter provides no new relevant information that the ALJ needs to consider and that Plaintiff fails to show any relevant

evidence contained within that would alter the outcome of the ALJ's decision. *Id.* at 19.

### 2.   Dr. Torres's February 24, 2021, Letter

Dr. Ann Torres reported that Plaintiff was initially seen in April 2018 with complaint of daily episodes of dizziness associated to ear fullness, palpitations, nausea, tinnitus, and occipital pain for one year duration. (AR 15). Dr. Torres notes that: Plaintiff reports continued follow up with his primary care doctor, neurologist, cardiologist, and ENT doctors over the last several years; he is currently taking an anxiolytic with this provider which has helped anxiety related to dizziness but has not resolved episodes of dizziness which he reports continue to happen daily; his wife has also spoken to this provider and has corroborated that he in fact experiences episodes of dizziness daily; his recounting of events has been consistent over the past [two] and half years in treatment with this provider; there is no evidence of malingering; [Plaintiff] expresses a strong desire to resume work but episodes have been impairing even when only trying to help family around the home; he also expresses distress as episodes have also impaired his social and personal activities; he finds it difficult to spend time with friends, go to church, etc. due to episodes; he is currently diagnosed with unspecified depressive disorder and unspecified anxiety disorder; rule out anxiety or mood disorder secondary to another general medical condition; rule out panic disorder; and he has been compliant with follow up visits. *Id.*

### 3.   Analysis

As a preliminary matter, the Court agrees with Plaintiff that "[a]lthough this medical evidence was submitted for the first time to the Appeals Council after the ALJ's decision, it is nevertheless evidence" that becomes part of the administrative record "which this Court must consider in evaluating whether the ALJ's decision is supported by substantial evidence." (Doc. 14 at 25-26) (citing *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012)); *see Tackett*, 180 F.3d at 1097-98 ("[A] court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.") (citation omitted).

The parties dispute whether Dr. Torres's letter is a medical opinion. As noted above, under the regulations applicable to Plaintiff's applications, the Commissioner does "not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The regulations further provide that the Commissioner will articulate the persuasiveness of "all medical opinions and all of the prior administrative medical findings in [the] case record" and sets forth specific factors that must be addressed. 20 C.F.R. §§ 404.1520c(b)-(c). Thus, if Dr. Torres's letter is a medical opinion and the ALJ failed to articulate how persuasive she found the opinion under the regulations, the ALJ erred.

Here, the ALJ's failure to discuss Dr. Torres's letter means she "did not address whether the letter was a medical opinion such that its treatment required the articulation set forth by the regulations. *Alvarez v. Comm'r of Soc. Sec.*, No. 1:21-cv-01711-CDB (SS), 2025 WL 1001589, at *5 (E.D. Cal. Apr. 3, 2025); *see Johnson v. Kijakazi*, No. 21-15919, 2022 WL 2593516, at *1 (9th Cir. 2022) (remanding case because "nowhere [in] the ALJ's decision [did she] examine the substance of [the] letter … so the agency c[ould] address in the first instance whether [the] letter include[d] medical opinions."). "Because a court may 'review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely,' the Court cannot affirm the ALJ's decision." *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)). Therefore, the ALJ erred in failing to discuss Dr. Torres's letter whatsoever. Further, although the ALJ addressed Dr. Torres's medical opinions in the decision (*see* AR 56-57), the ALJ's failure to acknowledge the letter is not harmless. *See id.*; *cf. Johnson*, 2022 WL 2593516, at *1 (majority op.) with *2 (Bea, J., dissenting) (concluding any error by ALJ in considering a medical opinion contained in a two-page letter was harmless given every limitation described in the letter was considered by the ALJ elsewhere). Accordingly, as in *Johnson*, remand to allow the ALJ to address in the first instance whether Dr. Torres's letter contains medical opinions is appropriate.

**C.      Whether the ALJ Provided Germane Reasons for Discounting the Third-Party Statement of Plaintiff's Spouse**

The undersigned notes that, at the time of the parties' briefing, it was an "open question whether ALJs are still required to consider lay witness evidence under the revised regulations,"

although it is settled an ALJ need not articulate her consideration of such evidence in a decision. *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022).  In the recent case of *Hudnall v. Dudek*, 130 F.4th 668 (9th Cir. 2025), the Ninth Circuit clarified that nonmedical sources, to include lay testimony from friends and family, are still to be considered in determining the consistency of medical opinions or prior administrative medical findings; nonetheless, the regulations expressly allow ALJs to discount nonmedical evidence without any explanation.  *Id.* at 670-71.  However, the Ninth Circuit later withdrew the *Hudnall* decision. *Hudnall v. Dudek,* 133 F.4th 968 (9th Cir. 2025); *see Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, at *1 (9th Cir. May 13, 2025) (declining to resolve the issue of standard applicable to an ALJ's review of nonmedical testimony).  As such, it appears the consideration of lay witness evidence under the revised regulations remains an open question.  As discussed below, the Court need to not resolve this dispute here.

### 1.    Parties' Contentions

Plaintiff contends the ALJ erroneously failed to provide germane reasons for discounting the third-party statement of his spouse, Aby Carrasco. (Doc. 14 at 26-27).  Plaintiff asserts the ALJ failed to provide any rationale for discounting Ms. Carrasco's statements, which, if credited, would support a finding that Plaintiff's impairments prevented him from performing the mental demands of full-time competitive work activity, and that the error is not harmless.  *Id.* at 27-28; *see* (Doc. 19 at 7-8).

Defendant argues that under the revised regulations, the ALJ is not required to specifically address lay witness evidence. (Doc. 18 at 20).  Defendant contends the revised regulations contain no directive that ALJs must articulate reasons for how they valued nonmedical evidence including lay witness evidence.  *Id.* at 21-22.

### 2.    Analysis

Plaintiff's spouse, Aby Carrasco, submitted a third-party function report on August 22, 2018.  (AR 605-12).  She reported that Plaintiff had shortness of breath, nausea, memory loss, pressure in his head; was slow in reacting to conversations; could not drive; that he blacked out when he bent over; that he had lightheadedness and involuntary eye movements; he could pay

23

attention for just a short period of time; he did not finish what he started; he did not handle stress or changes in routine well; and that he had deficits in following written and oral instructions. (AR 605, 610-11).

Regarding Ms. Carrasco's report, the ALJ stated only that "[s]imilarly, Aby Carrasco, the [Plaintiff's] wife, noted that [Plaintiff] has limitations to lifting, squatting, bending, standing, reaching, kneeling, talking, stair climbing, seeing, remembering, completing tasks, concentrating, understanding, and following instructions[.]" (AR 52) (citing Ex. 3E). The ALJ further stated that Plaintiff "and his wife reported that he is able to pay bills and count change" in finding the opinion of Dr. Torres persuasive. (AR 57) (citing Ex. 3E).

Thus, the record evidence is clear that the ALJ, in his assessment of Plaintiff's subjective symptomology testimony and consideration of prior administrative medical findings, referred to Ms. Carrasco' third-party function report. (AR 52, 57). This consideration was sufficient under the revised regulations. *See Schilling v. Comm'r of Soc. Sec.*, No. 1:21-cv-01268-SAB, 2022 WL 17418343, at *14 (E.D. Cal. Dec. 5, 2022) ("[T]he new regulations do not support a requirement that the ALJ articulate 'germane reasons' for rejecting lay witness testimony, but only a requirement that the lay testimony was 'considered.'"); *Mahnaz M. v. Kijakazi*, No. 22-cv-1729-BGS, 2024 WL 21794, at *8 (S.D. Cal. Jan. 2, 2024) (same); *e.g.*, *Mary M. v. Kijakazi*, No. 20-cv-1457-AGS, 2022 WL 891445, at *6 (S.D. Cal. Mar. 25, 2022) ("The Court concludes that ALJs are not required to articulate specific reasons for their findings about the persuasiveness of nonmedical-source testimony, and instead must merely show that they considered such evidence in deciding the claim.").

Additionally, even if the ALJ was required to articulate how he evaluated Ms. Carrasco's third-party function report, any failure to do so is harmless error as Ms. Carrasco's statements largely mirrored Plaintiff's own statements about his subjective symptomology. The Ninth Circuit holds that an ALJ is not required provide specific reasoning when rejecting lay witness testimony where such testimony was similar to the Plaintiff's own subjective complaints, which the ALJ provided clear and convincing reasons for rejecting. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("the ALJ provided clear and convincing reasons for rejecting

[plaintiff's] own subjective complaints, and because [the lay witness'] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness'] testimony"). Because Plaintiff does not contest that the ALJ provided clear and convincing reasons for discounting his subjective symptomology testimony, *see* (Docs. 14, 19), Plaintiff therefore waived any argument thereto and concedes this issue. *See* (AR 52); *Gertsch v. Colvin*, 589 Fed. Appx. 381, 381 (9th Cir. 2015) ("The ALJ rejected Gertsch's subjective complaints as not credible, a finding that Gertsch does not challenge on appeal and has therefore waived.") (citing *Avenetti v. Barnhart*, 456 F.3d 1122, 1125 (9th Cir. 2006)).

Another judge of this Court recently has credited Defendant's interpretation of the revised regulations. *See, e.g.*, *Gausling v. Comm'r of Soc. Sec.*, No. 2:24-cv-0301-DMC, 2025 WL 347280, at *11 (E.D. Cal. Jan. 30, 2025) ("The Court agrees with the Commissioner that the new regulatory framework requires an ALJ to consider lay testimony but does not necessarily require her to articulate how she considered it."). The *Gausling* court found that the ALJ did consider lay witness testimony because the ALJ summarized such testimony within her report. Similarly, the ALJ here considered Ms. Carrasco's third-party function report in summarizing the report's findings and in consideration of Dr. Torres's opinion. Therefore, the ALJ did not error in discounting Ms. Carrasco's report.

*        *        *        *        *

In sum, the ALJ failed to consider whether Dr. Torres's February 24, 2021, letter is a medical opinion that requires the ALJ to consider how persuasive she found the opinion under the regulations. The resulting error is not harmless. *Lambert*, 980 F.3d at 1278 (citing *Brown-Hunter*, 806 F.3d at 494).

**D.      Remedy**

Plaintiff requests this case be remanded for further proceedings and a new decision. (Doc. 14 at 28). "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court." *Trevizo*, 871 F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (emphasis

omitted) (9th Cir. 2004).

Given the error identified above, the Court concludes that remand for further proceedings is warranted because additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein.

**CONCLUSION AND ORDER**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 14) is GRANTED;

2. The ALJ's decision (Doc. 10) is REVERSED;

3. This matter is REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this decision; and

4. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Reyes Carrasco Valladares and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 27, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

26